IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| KANAY MUBITA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV07-58-S-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| OFFENDER SALWAY #77195, | ) | |
| and OFFICER LT. BARLOW, | ) | |
| ID. #5986, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court in the above-entitled matter is Defendants' Motion for Summary Judgment (Docket No. 38).  The Notice to Pro Se Litigants of the Summary Judgment Rule Requirement was sent to Plaintiff on March 25, 2009 (Docket No. 39).  Plaintiff timely filed an affidavit and argument pleading in response to the motion for summary judgment on April 9, 2009.  No reply brief was filed by Defendants.

Over three months later, Plaintiff filed three motions for a continuance and extension of time (Docket Nos. 41, 42 and 43).  The basis for the continuance request related to a post conviction evidentiary hearing which does not impact the motion for summary judgment since a response has already been filed.  The two motions for extensions of time filed in August 2009 are also moot since a response to the motion for

**MEMORANDUM DECISION AND ORDER  – 1**

summary judgment has already been filed and the attendance of Plaintiff at a hearing is not required.  Therefore, all three motions for a continuance or extension will be denied as moot.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## Procedural and Factual Background

Plaintiff Kanay Mubita, a prisoner in the custody of the Idaho Department of Correction ("IDOC"), asserts that Inmate Salway attacked him, and correctional officers, including Lt. Barlow, watched the attack for approximately thirty minutes before stopping it.  Plaintiff alleges that Lt. Barlow's actions of failing to intervene constitute deliberate indifference to Plaintiff's safety, a violation of the Eighth Amendment's Cruel and Unusual Punishment Clause.  Due to the hitting by Inmate Salway, Plaintiff claims he has lost vision in his left eye (which had an artificial lens from a surgery prior to his incarceration).

The Court determined in its Initial Review Order that Plaintiff had stated a cognizable Eighth Amendment civil rights claim against Lt. Barlow, but that claims against a Inmate Salway would be dismissed as Salway is a not a state actor for purposes of a civil rights action pursuant to 42 U. S. C. § 1983.  Plaintiff was advised if he wanted

**MEMORANDUM DECISION AND ORDER  – 2**

to sue Inmate Salway, he would need to file a separate action in state court.   Plaintiff was also advised in the Initial Review Order that it was unclear whether Plaintiff had exhausted his administrative remedies which is required for an action of this type to proceed in Federal Court since he checked the box on page 5 of his Complaint that he had not exhausted the grievance system at the prison.  Docket No. 3.

On April 24, 2007, Plaintiff filed a motion to amend his complaint (Docket No. 8) and an Amended Complaint (Docket No. 11).   The motion to file an amended complaint was granted by the Court on November 6, 2007 (Docket No. 14) and the Court noted to the extent Plaintiff is seeking to add a second claim that he is not receiving proper medical care, the Plaintiff may file a Second Amended Complaint to include medical defendants and medical causes of action. Id.

The First Amended Complaint identifies Sergeant Rhodes and Jenkins as being correctional officers who responded to the attack by Inmate Salway.  The Defendants in the Amended Complaint are listed only as Inmate Salway and Lt. Barlow.  The Amended Complaint also states Plaintiff has not been notified what the medical personnel intend to do about his eye and this is deliberate indifference.

On March 21, 2008, Plaintiff filed two motions to amend his complaint to include other responsible parties (Docket No. 22 and 24).  Plaintiff sought to add the following parties as defendants: Warden Randy Blades, Jay Christensen (Deputy Warden), Sergeant Rhodes, Correction Officer Jenkins, Correction Officer Greenland, Unnamed Tower Guard #5, Unnamed Tower Guard #3, Unnamed Yard Sergeant.  The factual allegations

**MEMORANDUM DECISION AND ORDER  – 3**

were expanded to include a claim that Lt. Barlow placed the Plaintiff in segregation instead of seeking medical treatment for his injuries. Plaintiff claims the delay in medical treatment was deliberate indifference on the part of the IDOC Defendants.  Plaintiff claims the IDOC Defendants took him to the medical department three days after he was placed in segregation even though he complained to the staff he was in pain while he was in segregation.  Plaintiff claims he has had to wait over a year and five months for an operation on his eye and that the loss of vision is cruel and unusual punishment.

The Court denied the motion to amend indicating the Plaintiff had failed to allege sufficient facts to state a claim against Warden Randy Blades, Deputy Warden of Security Jay Christenson, John Doe II, the "shift commander" or John Doe III, the yard sergeant. Docket No. 28.  The Court will allow Plaintiff to proceed against the two correctional officers involved in this incident: Lt. Barlow, Sergeant Rhodes and the Tower #3 Correctional Officer who allegedly allowed the attack by Inmate Salway to occur and did not provide adequate medical care to Plaintiff after he had been hit by Inmate Salway.

IDOC Defendants have moved for summary judgment claiming there are no issues of material facts showing deliberate indifference by the Defendants to Plaintiff's safety and medical needs.  Defendants argue there was not deliberate indifference and that they are entitled to qualified immunity.  Plaintiff disagrees with certain facts regarding the length of time it took officers to respond and whether he was seen by medical personnel on the date of the incident.

**MEMORANDUM DECISION AND ORDER  – 4**

The facts of the incident are generally undisputed.  On October 8, 2006, inmates were waiting outside in the recreational yard to go to dinner.  Certain inmates were throwing a football around in the recreational yard which was an allowed activity. Sergeant Rhodes states in his affidavit he was in charge of the recreational yard for two years and never had any other football injury incidents.

Plaintiff was hit by the football.  He picked up the football and threw it away from those playing with the football.  Inmate Salway came up to Plaintiff and asked why he threw the football and to say it was not on purpose when Plaintiff was hit with the football.  Plaintiff did not want to discuss the matter.  Salway then got upset and hit Plaintiff on the left side of his head saying the hit was on purpose.  Salway hit Plaintiff two more times.  Plaintiff grabbed Salway to keep him from hitting him anymore.

Sergeant Rhodes responded to the incident after being informed by Tower 3 two inmates were fighting in the recreation yard.  Rhodes said he immediately went to the front door and waited for the control room to open the door (that may have taken a minute or two).  He entered the recreation yard and scanned for the disturbance.  Plaintiff was holding Salway and the fight was already over.  Rhodes noticed Plaintiff's teeth which were red with blood and there was blood on the concrete.

Rhodes questioned Plaintiff in the recreational yard and then removed Plaintiff from the recreational yard to Unit 14.  Rhodes called Tower 3 to verify Plaintiff's version of events.  Rhodes as the Unit 14 control room officer to notify Shift Commander Lt. Barlow and he requested a code "109" (the radio call sign for medical personnel) be

**MEMORANDUM DECISION AND ORDER  – 5**

notified to respond to the unit).  Rhodes admits he did not have authority to call medical

personnel on his own and that the Shift Commander had to be briefed prior to medical

staff being notified.  The time on Rhodes Staff Incident/Information Report indicates that

the fight took place at approximately 17:45.

While he was in the recreational yard, Rhodes asked Correctional Officer Jenkins

to escort Inmate Salway into Unit 14.  Jenkins took Salway's statement in Unit 14 and it

was consistent with what had been observed by Tower 3 and communicated by Plaintiff.

Salway admitted to hitting Plaintiff three times and it was his fault.

Both inmates were placed in segregation in Unit 8 at the direction of Lt. Barlow to

allow the incident to be further investigated and for inmate safety.  Plaintiff complains Lt.

Barlow should not have placed Plaintiff in segregation without a medical exam.

A Staff Incident/Information Report was completed by Tyson Stewart[1] at 2100 on

October 8, 2006.  The report indicates Stewart was called to Unit 8 and medically

accessed Plaintiff noting: "found one sore under upper lip no immediate care needed, no

bleeding noted area red lips swollen, didn't offer any information on how it occurred or

why it occurred.  No injury noted to left eye."

---

[1]In Defendants' briefing, Docket No. 38-1, p.13, Defendants state Plaintiff was seen by
Correctional Medical Specialist Joshua Taylor and then referenced the incident report of the
assessment.  However, the name on the incident report is Tyson Stewart, not Joshua Taylor.  The
Court will use the name of the medical specialist on the incident report.  Plaintiff references this
incident report in his response to the motion for summary judgment, Docket No. 40, p. 2, and
uses the name Tony Stewart to indicate the medial assessment was over 1 and ½ hours after the
incident. Again, the Court finds the Plaintiff meant Tyson Stewart, not Tony Stewart.

**MEMORANDUM DECISION AND ORDER  – 6**

Plaintiff admits in his deposition that the three hits by Inmate Salway occurred rapidly, that it took 30 minutes for the entire incident including the interviews by Rhodes and Jenkins, that pictures of his face were taken, that he was a bit confused after being struck three times, and that he was not seen by medical personnel on the date the incident occurred.  Plaintiff indicates in his deposition that the Incident Report by Tyson Stewart and signed by the Assistant Shift Commander on October 8, 2010 is a lie.[2]

Plaintiff also states in his deposition that the fighting continued for 18 to 20 minutes before Rhodes and Jenkins arrived (however his own recitation of the events does not support that the fighting lasted 18 to 20 minutes).[3]  Plaintiff states he was only

---

[2]In response to the motion for summary judgment and the various jail documents showing Plaintiff was examined by a medical specialist, Plaintiff responds that the records are inaccurate.  Plaintiff offers no evidence to corroborate his conclusory allegation that the Incident Report of Stewart is a lie.  Pursuant to Fed. R. Civ. P. 56(e): " When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of  the adverse party's pleading. . . ."   In re Rogstad, 126 F.3d 1224, 1227-28 (9th Cir. 1997).  Specific facts must be set forth instead of merely alleging the documents have been falsely created.  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88, (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir.1995).  Therefore, Plaintiff's conclusory denials of the Defendants' evidence without more does not create a genuine issue of fact.

[3]In his deposition, Docket No. 38-4, Plaintiff states on page 31-32:
Q. What did you do with the football immediately after you got hit in the [right] eye?
A. I stood up, and I said, "You guys, I just told you, you know, this ball has hit me."   So I grabbed the ball, I tossed it to the door, Unit 14 door.
Q.  After you tossed the football to the Unit 14 door –
A. Right.
Q. – what did Mr. Salway do?
A. Mr. Salway came straight up to me, and he said, "I didn't do it on purpose."
I said, "Well, you know what, if I'm angry with your Ill cme to you and face you, but I don't want to talk about it.  Just go away."

**MEMORANDUM DECISION AND ORDER  – 7**

taken to the medical department after three days in segregation.[4]

     Rhodes estimates from the time he first saw Plaintiff on the recreational yard and the fight had ended until the time he requested medical personnel to respond could not have been more than 10 minutes and could have been as short as 5 to 8 minutes.

     Tower #3 Correction Officer Darrow filed a Staff Incident/Information Report which indicates at 17:40 he saw Inmate Salway and Plaintiff fighting and that he saw Salway throw three punches to Plaintiff's head.  Darrow immediately called Unit 14 to inform them of the fight and Rhodes and Jenkins responded to the recreational yard.  Jenkins took Salway to Unit 14 while Rhodes talked with Plaintiff in the yard before removing him to Unit 14.  Darrow's Incident report says the fighting occurred at 17:40

---

Q. What happened next?

A.  Next he swings.  He punched because I was ignoring him.  He punched me and siad, "that's on purpose."

And I said, "Why are you punching me?"  And he punch me again. I got confused, you know, I was like, why is this guy hitting me, so I grabbed him to, you know, to push him away from hitting me.

And then he started throwing again.  He punched me again.  And then Sergeant Rhodes came in and he said, "Stop."

Finally I was holding him like this.  He was still swinging, and I was trying to – you know, I didn't want to hit him.  I was confused.  I didn't know what to do.  I was like, this guy is hitting me, and I'm kind of confused, you know.

I grabbed him from hitting me.  So the sergeant came, and they took Salway.  They took him to the office.  They told me to sit down.  I was bleeding.

They took him, and the sergeant started asking me what happened.  Because I was confused, I was asking the sergeant, "Why was he hitting me?"

[4]As discussed later in the order, the incident occurred the evening of October 8, 2006 and Defendant was evaluated by a nurse from the medical unit on the morning of October 10, 2008. So the time between the incident and medical services alleged by Plaintiff is less than two days, not three days.

**MEMORANDUM DECISION AND ORDER  – 8**

and that Correction Officer Hymas and Sargeant Rollins arrived at Unit 14 around 17:46 and took both offenders to Unit 8.  Rhodes' incident report has his involvement at 17:45. Based on these independent reports and Plaintiff's own description of the timing of the punches, lead the Court to conclude no reasonable juror could find that Plaintiff was being hit for 18 to 20 minutes before Sergeant Rhodes arrived in the recreational area.

Plaintiff claims the medical personnel that saw him four days after the incident (which is after three days in segregation) indicated he needed to see the eye doctor right away.  The incident in the recreational yard occurred at approximately 17:40 on October 8, 2006.   While Plaintiff disagrees that he was seen by medical personnel at any time on October 8, 2006, the medical records provided by Plaintiff in response to the motion for summary judgment, Docket No. 40-1, indicate that Plaintiff made a written request for medical for his bad eye on October 10, 2006.  Id.   The Health Care Documentation by the LPN indicates she examined Plaintiff at 08:30 on October 10, 2006 and that a follow up appointment with an eye doctor was necessary.  Id. On October 12, 2008, Plaintiff saw the eye doctor.  Plaintiff had numerous other medical reviews regarding his left eye including an evaluation by Dr. Anderson on December 26, 2006 and Dr. Hart on January 29, 2007.  Id. While Plaintiff claims he needs an eye operation, no medical records since January 2007 have been provided to the Court indicating an operation is required.

**MEMORANDUM DECISION AND ORDER – 9**

Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial.  See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.[5]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of

---

[5] See also, Rule 56(e) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM DECISION AND ORDER  – 10**

summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir.1995).

**MEMORANDUM DECISION AND ORDER  – 11**

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

Analysis

A.  Failure to exhaust administrative remedies

As discussed in the Initial Review Order, it appears Plaintiff has failed to exhaust his administrative remedies and that the pending claims should all be dismissed.  Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[6] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  Woodford v. Ngo, 548 U.S. 81, 88 (2006).  The test is whether the administrative remedies were exhausted when the complaint was filed.  Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006); McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).  The complaint must be dismissed without prejudice even if the administrative remedies are exhausted while the litigation is pending.  Id.

---

[6]  110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e, et seq.

**MEMORANDUM DECISION AND ORDER  – 12**

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). The Jones v. Bock Court noted that the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Id. at 204.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. Woodford v. Ngo, 548 U.S. at 103. In Woodford v. Ngo, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system. Id. at 86-87. The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." Id. at 87.

Failure to exhaust remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 210 (2007). In deciding whether or not to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. Defendants bear the burden of proving failure to exhaust. Brown v. Valoff, 422 F.3d 926 (9th Cir. 2005).

Where a court (1) determines that a civil rights complaint contains both exhausted and unexhausted claims, and (2) determines that "the unexhausted claims are not intertwined with the properly exhausted claims," the court should dismiss the unexhausted claims and allow the inmate to proceed on the exhausted claims. Lira v.

**MEMORANDUM DECISION AND ORDER – 13**

Herrera, 427 F.3d 1164, 1175 (9th Cir. 2005). "On the other hand, when a plaintiff's 'mixed' complaint includes exhausted and unexhausted claims that are closely related and difficult to untangle, dismissal of the defective complaint with leave to amend to allege only fully exhausted claims is the proper approach." Id. at 1176.

In this case, Plaintiff admits in his original Complaints that he did not file a grievance regarding either the alleged delay in correctional officers responding to the fight or to the alleged delay in medical treatment. Docket No. 3, p.5. In the First Amended Complaint, Plaintiff checked that he had exhausted all administrative remedies, but did not explain in the Complaint how he exhausted his administrative remedies. Docket No. 11, p. 8. Defendant raised the affirmative defense of failure to exhaust administrative remedies in its Answer to the Amended Complaint. Docket No. 18.

Accordingly, while not included in the motion for summary judgment, the Plaintiff was put on notice of the exhaustion requirement in the Court's Initial Review Order, Docket No. 7 and elected to attempt to proceed with his case without any evidence that he had exhausted his administrative remedies prior to filing his Complaint or Amended Complaints. Therefore, the Plaintiffs' claims should be dismissed since Plaintiff failed to exhaust his available administrative remedies and Defendant raised it as an affirmative defense.

B. Merits of Claims

In the alternative, since the exhaustion requirement was not raised by Defendants

**MEMORANDUM DECISION AND ORDER – 14**

in their motion for summary judgment, the Court will address the merits of the motion for summary judgment.

### 1. Deliberate Indifference

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute.  To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law.  Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

To state a claim under the Eighth Amendment, a plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal citation omitted).  A plaintiff must also show that Defendants were deliberately indifferent to plaintiff's needs.  Deliberate indifference exists when an official knows of and disregards an unconstitutional condition or when the official is aware of facts from which the inference could be drawn that a risk of harm or violation exists, and actually draws the inference.  Farmer v. Brennan, 511 U.S. at 837.

### 2. Qualified Immunity

Defendants argue that Plaintiff has not established any constitutional claims and that the Defendants are entitled to qualified immunity.  Police officers and jail staff are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional

**MEMORANDUM DECISION AND ORDER  – 15**

rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815 (1982). The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." <u>Saucier v. Katz</u>, 533 U.S. 194, 200, 202 (2001). On the other hand, this privilege allows redress where clear wrongs are caused by state actors. <u>Id.</u> "The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Id.</u> at 200-01. "As a result, [courts] have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," long before trial. <u>Id.</u> at 201, <u>see</u> <u>also</u> <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 873 (9th Cir. 1993) (citing <u>Hunter v. Bryant</u>, 502 U.S. 224 (1991)).

The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, (2001); <u>Billington v. Smith</u>, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity." <u>Saucier</u>, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." <u>Id.</u> "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 202. "The question is what the officer reasonably

**MEMORANDUM DECISION AND ORDER  – 16**

understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208.  Plaintiff bears the burden of establishing the rights violated were "clearly established."  Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

"[S]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Therefore, the Court will analyze the specific constitutional rights Plaintiff alleges were violated by the Defendants.

3. Deliberate Indifference Regarding the Fight

Plaintiff alleges that the IDOC Defendants were deliberately indifferent to the attack by Inmate Salway.  The Court respectfully disagrees.

The undisputed facts are that based on the numerous records regarding the incident, the Plaintiff's own deposition, and the affidavit of Sergeant Rhodes establish the incident took place at approximately 17:40 on October 8, 2006 and that Officer Darrow notified Unit 14 of the fighting immediately.  Plaintiff admits the three punches by Inmate Salway occurred in a very short amount of time and that he was holding off Salway when Sergeant Rhodes entered the Recreational Area.  Playing with a football was an approved activity for the recreational area and the football hitting an inmate was an isolated accident and such an accident had not occurred before.  Plaintiff admits the total time from the beginning of the football incident to the investigation and his placement in segregation was 30 approximately minutes.

**MEMORANDUM DECISION AND ORDER  – 17**

Plaintiff has failed to create a genuine issue of material fact regarding his placement in the recreational yard with other inmates throwing the football in the same area.  The conditions that existed simply did not pose "a substantial risk of serious harm," or indicate that he has been deprived of "the minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal citation omitted).

The Plaintiff was not seriously injured when he was hit by the football.  The Eighth Amendment does not protect against *de minimis* injuries in a failure to protect case.  Norman v. Taylor, 25 F.3d 1259, 1263-64 (4th Cir. 1994).  Therefore, the officers were not deliberately indifferent to Plaintiff's safety by allowing the football to be played with in the recreational area.

Nor has a genuine issue of material fact been established regarding the response time of the Defendants to the punching by Inmate Salway.  As to Plaintiff's claim the officers did not respond quickly to the incident, the undisputed facts do not support this argument.  There were three punches in rapid succession and then no more.  The correctional officers arrived within minutes under Plaintiff's own deposition testimony.  This testimony is corroborated by the times listed on the numerous incident reports filed by correctional officers.  Plaintiff has not alleged a conspiracy on the part of the correctional officers in the times listed on their reports which were created when the incident occurred, not when the lawsuit was filed.  The events of October 8, 2006 and the reactions of IDOC personnel do not create a genuine issue of material fact that IDOC officials failed to timely respond and were deliberately indifferent to the safety of the

**MEMORANDUM DECISION AND ORDER  – 18**

Plaintiff.  This constitutional claim must be dismissed.

4. Deliberate Indifference Regarding Medical Care

Plaintiff claims in his deposition that he is suing Lt. Barlow because she failed to have the Plaintiff examined by medical personnel prior to placing him in segregation and that some unknown medical condition could have caused him to die in segregation.  The undisputed evidence indicates Sergeant Rhodes requested medical attention for Plaintiff when he requested "109."   Photos of Plaintiff's injuries were taken while he was at Unit 14 and prior to him being transferred into Unit 8.

While Plaintiff disputes that medical personnel examined him on the evening of October 8, 2006, Plaintiff submitted the medical forms which indicate Plaintiff requested and was seen by a nurse on October 10, 2006 and then by an eye doctor on October 12, 2006.  Plaintiff has provided no evidence that the delay in medical treatment until October 10, 2006 (assuming for purposes of this motion that Plaintiff was not seen on October 8, 2006 by Mr. Stewart), caused any additional damage to his eye.  Nor has Plaintiff filed any claims against any of the numerous medical providers that have evaluated Plaintiff's eye.

In the Ninth Circuit, the test for deliberate indifference to medical needs consists of two parts. McGuckin v. Smith, 974 F.2d 1050 (9th Cir.1991), overruled on other grounds by WMX Techs., Inc. v.  Miller, 104 F.3d 1133 (9th Cir.1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

**MEMORANDUM DECISION AND ORDER  – 19**

wanton infliction of pain.' " Id. at 1059 (citing Estelle, 429 U.S. at 104). Second, the

plaintiff must show the defendant's response to the need was deliberately indifferent. Id.

at 1060. This second prong-defendant's response to the need was deliberately

indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's

pain or possible medical need and (b) harm caused by the indifference. Id.  Indifference

"may appear when prison officials deny, delay or intentionally interfere with medical

treatment, or it may be shown by the way in which prison physicians provide medical

care." Id. at 1059 (quoting Hutchinson v. United States, 838 F.2d 390, 392 (9th

Cir.1988)). Yet, an "inadvertent [or negligent] failure to provide adequate medical care"

alone does not state a claim under § 1983.  Id. (citing Estelle, 429 U.S. at 105). A prisoner

need not show his harm was substantial; however, such would provide additional support

for the inmate's claim that the defendant was deliberately indifferent to his needs. Id. at

1060. If the harm is an "isolated exception" to the defendant's "overall treatment of the

prisoner [it] ordinarily militates against a finding of deliberate indifference." Id. (citations

omitted).

Further, to demonstrate deliberate indifference, a prisoner must allege facts

sufficient to indicate a culpable state of mind on the part of prison officials.  Wilson v.

Seiter, 501 U.S. 294, 297 (1991).  The deliberate indifference standard is a higher

standard than gross negligence.  Wood v. Ostrander, 879 F.2d 583, 588 (9th Cir. 1989).

Mere indifference, medical malpractice or negligence will not support a cause of action

under the Eighth Amendment.  Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir.

**MEMORANDUM DECISION AND ORDER  – 20**

1980).

In the present case, the Court will assume for purposes of the motion for summary judgment that Plaintiff was not provided medical care until the morning of October 10, 2006, which was approximately 38 hours after the Plaintiff was punched.  The Court will even assume for purposes of this motion that first prong of the deliberate indifference test is satisfied in that the injury to Plaintiff's left eye was a "serious medical need" on the evening he was punched.  But even with these assumptions, the Court finds that Plaintiff has not established a genuine issue of material fact regarding the second prong elements. Plaintiff has not shown any additional harm was suffered by the delay from the evening of October 8, 2006 to the morning of October 10, 2006.  He has made no allegations that the IDOC Defendants delayed or interfered with medical treatment and that such delay caused additional harm.  Further, the Plaintiff has failed to submit any facts that the IDOC Defendants had a culpable state of mind regarding the alleged deliberate indifference to Plaintiff's medical needs.

Mere indifference by the IDOC Defendants to the alleged injury for 38 hours does not rise to the level of a constitutional violation.  Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir. 1980).  Moreover, there is no evidence that IDOC officials failed to respond to Plaintiff's pain.  There are no written requests for medical treatment prior to the request on October 10, 2006 and it is undisputed that Plaintiff was seen by medical personnel on the morning of October 10, 2006 after he filed a written request for treatment for his eye. There is no evidence that Plaintiff's medical condition was caused by the alleged delay in

**MEMORANDUM DECISION AND ORDER  – 21**

medical treatment.  The injury was caused by the punching by Inmate Salway, not deliberate indifference by IDOC Defendants.  In fact, the medical records regarding Plaintiff's eye support that the IDOC medical personnel were not responsive to Plaintiff's medical needs regarding his left eye.

Finally, the nature of this isolated incident does not rise to the level of deliberate indifference.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990); Toussaint v. McCarthy, 801 F.2d 1080,1111, (9th Cir. 1986).

For all these reasons, the Court finds Plaintiff has not satisfied the second prong of a deliberate indifference claim regarding medical care, the Court must grant summary judgment in favor of the Defendants as no constitutional violation occurred.


C.  Conclusion

Having found no genuine issues of material fact regarding the alleged constitutional violations, the Court finds IDOC Defendants are entitled to summary judgment on all claims of deliberate indifference.  The Court finds as a matter of law, Plaintiff has failed to establish a constitutional violation on the part of the IDOC Defendants.  Moreover, no reasonable juror could find when viewing the facts most favorable to Plaintiff that the IDOC Defendants were deliberately indifferent to Plaintiff's safety or medical needs.  Therefore, the Court need not reach the question of whether Defendants are entitled to qualified immunity.


**MEMORANDUM DECISION AND ORDER  – 22**

**Order**

Being fully advised in the premises, the Court hereby orders that:

1) Defendants' Motion for Summary Judgment (Docket No. 38) is GRANTED as to all claims of deliberate indifference and the case is dismissed against all IDOC Defendants.

2) Plaintiff's motions for continuances and extensions (Docket Nos. 41, 42 and 43) are DENIED AS MOOT.

DATED:  **October 13, 2009**

Honorable Edward J. Lodge
U. S. District Judge